UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KURTULUS K. KALICAN,         : | |
|     Plaintiff,         : | |
|           : | |
| v.         : | CASE NO. 3:12-cv-1009 (SRU) |
|           : | |
| JAMES E. DZURENDA, et al.,         : | |
|     Defendants.         : | |

**INITIAL REVIEW ORDER RE: ORIGINAL AND AMENDED COMPLAINTS**

The plaintiff, Kurtulus K. Kalican, currently incarcerated at the MacDougall Correctional Institution in Suffield, Connecticut, has filed a complaint and amended complaint *pro se* under 42 U.S.C. § 1983 (2000) seeking damages from the defendants. On January 22, 2013, I dismissed many of the claims as time-barred and determined that the remaining allegations failed to state cognizable claims. Kalican appealed the dismissal. By mandate filed January 12, 2015, the Second Circuit determined that I should have considered this action filed on March 15, 2012, the day Kalican states that he mailed an unsigned complaint to the court, rather than June 5, 2012, the date he signed the complaint and, presumably, gave it to prison officials for mailing. The Second Circuit affirmed the dismissal of the claims that had been deemed timely filed, claims for denial of due process and for lost property. Accordingly, I now review all claims included in the original and amended complaints arising from events occurring after March 15, 2009, but not addressed in the prior ruling.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."

*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 .  But *pro se* documents are liberally construed and interpreted to raise the strongest arguments they suggest.  *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

I.      Allegations

Kalican asserts three counts.  Each count is styled as a separate complaint with specific named defendants, factual allegations and requests for relief.

   A.      Count One

Count One is included in what has been docketed as the amended complaint (doc. # 11). The defendants for Count One are District Administrator Wayne Choinsky, Warden Murphy, Captain Vanoudenhove, Lieutenant Cormier, Correctional Officers Allen and Hicks, Deputy Warden Adgers, and Counselor Supervisors Trapasso and Rodriguez.  Defendants Choinsky, Murphy and Adgers are named in their individual and official capacities.  All other defendants are named in their official capacities only.  Kalican seeks only damages for relief.

Many of the allegations in Count One relate to incidents occurring in 2008, well beyond the limitations period.  Kalican challenges a disciplinary report he received in August 2008 and alleges that, in November 2008, he was held in restrictive housing for four days beyond the seven-day sanction.  Those claims are time-barred as explained in the prior ruling.

Kalican includes only one allegation in Count One that occurred after March 15, 2009. On May 10, 2009, Kalican wrote to Counselor Supervisor Trapasso inquiring about a grievance he had filed two months earlier. On May 13, 2009, the grievance was returned to him. The grievance, filed on December 7, 2008, was rejected as untimely because it was filed more than thirty days after the incident that was the subject of the grievance.

B.      Count Two

Count Two is what has been docketed as the initial complaint (doc. # 1). The named defendants for Count Two are District Administrator James E. Dzurenda, Warden Lee, Deputy Warden Adgers, Unit Manager Counselor Supervisors Rodriguez and Hannah, Grievance Coordinator Counselor Supervisor Trapasso, Lieutenant Provencher, Grievance Coordinator Correctional Officer Hicks, and Correctional Officers McKanzie, Ms. G, Genovise, Bubbitt and Santini. Defendants Dzurenda, Lee and Adgers are named in their individual and official capacities. All other defendants are named in their official capacities only. Kalican seeks only damages for relief.

The following incidents occurred during the three years prior to the presumed filing date of March 15, 2012. On March 18, 2009, Kalican submitted an inmate request for a legal call and copies. He was not permitted to make the call that day. The following day, his counselor told Kalican that his attorney would accept collect calls.

On March 25, 2009, Kalican was called to the counselor's office. He was permitted to call the court clerk but was denied permission to make a second call to the court reporter at that time. Kalican became upset and left the counselor's office without taking his legal papers. Later he asked a correctional officer to return to the counselor's office with him to enable Kalican to

retrieve the papers because Kalican was afraid the counselor would yell at him. The correctional officer refused. Later that day the counselor refused to return the papers. On March 29, 2009, Kalican wrote a complaint about the counselor to Unit Manager Hannah. On April 2, 2009, Unit Manager Hannah said that she would speak to the counselor.

On March 30, 2009, Kalican saw his counselor and wanted to ask him questions. The counselor told Kalican that he would answer questions during shower/phone time.

On April 6, 2009, Kalican wrote to Unit Manager Hannah seeking permission to use the typewriter. She told him he could sign up to use the typewriter in the resource center during recreation time. On April 9, 2009, a correctional officer informed Unit Manager Hannah that the typewriter was broken. On April 22, 2009, Kalican spoke with Unit Manager Hannah about the typewriter and she stated that she would order a new one. On May 3, 2009, Kalican submitted a complaint to Commissioner Lantz, Warden Lee and Unit Manager Hannah regarding typewriter use. On May 15, 2009, Kalican spoke with Unit Manager Hannah again regarding the typewriter. She did not recall that the typewriter was broken. Again, she stated that she would order a new typewriter.

On April 17, 2009, Kalican was permitted to make one legal call and denied permission to make a second legal call at the same time. The previous day, he had requested a copy of his inmate trust account statement for the previous six months. He was provided a copy showing only the previous three months. On April 25, 2009, Kalican requested regular and manila envelopes for legal mail. The request was denied because Kalican had not met the indigency requirement for the previous ninety days. On May 3, 2009, Kalican requested a call to his union to inquire about retirement issues. He was told to write a letter; personal calls were not

4

permitted. On May 5, 2009, Kalican asked his counselor for blank paper for the typewriter and an envelope. The request was denied because Kalican did not meet the indigency requirement.

On May 4, 2009, Correctional Officer Sosause stared at Kalican in the dining hall. When Kalican told Correctional Officer Sosause he was not permitted to stare, Correctional Officer Sosause "ripped" his identification card from his chest and ordered Kalican to return to his housing unit. Kalican's request for a copy of the video tape was denied. Other correctional officers told Kalican that correctional staff can watch inmates. Kalican complained to the unit manager, warden, district administrator and state police. Correctional Officer Sosause verbally harassed Kalican whenever he saw him. Following an investigation into Kalican's complaints, Correctional Officer Sosause was transferred to another facility.

On May 10, 2009, Kalican submitted a request to Counselor Supervisor Trapasso. A grievance that Kalican had filed in January 2009 regarding typewriter use had been upheld. Now, Kalican sought sanctions for failure to comply with that grievance result. Kalican did not receive a response to the May 2009 grievance.

On May 25, 2009, Kalican asked Unit Manager Hannah for a cell change. The request was denied because convenience cell changes were not permitted.

On June 5, 2009, Kalican tried to speak to the warden. A correctional officer prevented him from doing so because he was not properly dressed.

    C.    <u>Count Three</u>

Count Three is included in the amended complaint. The named defendants for Count Three are District Administrator James E. Dzurenda, Warden John Alves, Deputy Wardens Butrick and Donahue, Captain Harlow, Counselor Supervisors Trapasso and Hannah,

Lieutenants Callenger, Provencher and Guzman, and Correctional Officers Browley, Volpe, Granada, Domizio, Ignacio, Hogan, Sosause and Fantona.  Defendants Dzurenda, Alves, Butrick and Donahue are named in their individual and official capacities.  All other defendants are named in their official capacities only.  Kalican seeks only damages for relief.

Kalican alleges that, on April 4, 2009, a correctional officer stopped him on the way to the dining hall and asked Kalican what he had in his pocket.  Kalican showed the officer his kufi.  The officer told Kalican that he could not bring his kufi to the dining hall.  When Kalican questioned the officer's statement, Lieutenant Provencher said that the officer was allowed to make such a statement.  When he was leaving the dining hall, Correctional Officer Sosause searched him and took a seasoning packet that Kalican had in his pocket.  Lieutenant Provencher watched the search.

On May 5, 2009, Correctional Officer Sosause stared at Kalican in the dining hall.  Lieutenant Callenger did not intercede and told Kalican that Correctional Officer Sosause was permitted to stare at him.  When Kalican stopped to question other correctional staff as he was leaving the dining hall, Correctional Officer Sosause shouted at Kalican to return to his housing unit.  Kalican wrote to the state police about the incident.

On June 19, 2009, Kalican was awakened at 5:30 a.m. and taken to Captain Harlow's office where he was questioned about the incident with Correctional Office Sosause.  When Kalican asked to have the videotape reviewed, Captain Harlow stated that the video was not clear.  Kalican believes this statement is evidence of a cover-up.

On July 1, 2009, Correctional Officer Sosause stopped Kalican as he was leaving the dining hall after breakfast.  When Kalican asked Correctional Officer Sosause not to curse in his

6

presence, Correctional Officer Sosause cursed more, searched the plaintiff and ripped up his medical pass.  Kalican then went to the med line and obtained his medication.  Kalican spoke with Lieutenant Guzman regarding this incident.  On July 18, 2009, Lieutenant Guzman stated that, as a result of his investigation, he had two contradictory versions of the incident from Kalican and Correctional Officer Sosause and could not tell who was telling the truth.  Kalican alleges that Lieutenant Guzman did not view the videotape as part of his investigation.

Kalican also alleges that, in August 2009, Warden Alves found no evidence of staff misconduct regarding this incident.  The claim against Warden Alves was dismissed in the prior order.

II.     Analysis

The possible claims in the original and amended complaints that relate to incidents that occurred after March 15, 2009, consist of harassment by correctional staff, denial of access to the courts, failure to respond to grievances and failure to change his cell assignment.  I previously dismissed all claims for denial of due process and lost property.

    A.     Eleventh Amendment Immunity

As an initial matter, Kalican has named supervisory officials in their individual and official capacities and the remaining defendants in their official capacities only.   Kalican seeks only money damages in the original and amended complaints.

The Eleventh Amendment divests the court of subject matter jurisdiction over any claims for monetary damages against a state actor acting in his official capacity unless the state has waived that immunity or Congress has enacted a valid override.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Section 1983 does not abrogate state sovereign immunity.  *See Quern v.*

*Jordan*, 440 U.S. 332, 343 (1979). Kalican has named many of the defendants in their official capacities only and seeks only monetary damages. He has not presented any evidence that the State of Connecticut has waived sovereign immunity with regard to those claims. Because this court lacks subject matter jurisdiction over any claims for monetary damages against the defendants in their official capacities, all claims against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2). The only remaining defendants are District Administrator Choinsky, Warden Murphy and Deputy Warden Adgers in Count One, District Administrator Dzurenda, Warden Lee and Deputy Warden Adgers in Count Two, and District Administrator Dzurenda, Warden Alves and Deputy Wardens Butrick and Donahue in Count Three.

  B. <u>Harassment</u>

Kalican alleges various incidents of harassment, both physical and verbal. He alleges that on two occasions Correctional Officer Sosause stared at him in the dining hall. Correctional Officer Sosause also ripped up Kalican's identification card and medical pass and searched his person outside the dining hall. Another correctional officer stopped Kalican and told him he could not bring his kufi to the dining hall. Other defendants watched these incidents. Kalican also alleges that staff verbally harassed him and cursed at him.

Verbal harassment and threats do not rise to the level of a constitutional violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007). Nor does staring at an inmate. *See Wingo v. Tennessee Dep't of Corrections*, 499 F. App'x 453, 455 (6th Cir. 2012) (allegations that correctional staff violated plaintiff's constitutional rights by verbally harassing him and staring failed to state plausible

claim).

The Second Circuit considers brief confrontations between inmates and prison guards that cause *de minimis* injuries insignificant for Eighth Amendment purposes. *See Perry v. Stephens*, 659 F. Supp. 2d 577, 582-83 (S.D.N.Y. 2009) (citing cases). Kalican has alleged only brief encounters and no physical injuries. I conclude that the complaints fail to state a plausible claim based on the allegations of harassment and any such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C. Access to Courts

Kalican's allegations that he was denied access to a typewriter, legal calls were delayed and his requests for envelopes and paper were not immediately granted will be treated as asserting claims for denial of access to the courts.

Kalican has no independent constitutional right to use a typewriter. Due process requires only that prisoners have access to pens and paper. *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977). "[T]here is no constitutional right to a typewriter as an incident to the right of access to the courts." *Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994); *see also Little v. Municipal Corp.*, No. 12-CV-5851(KMK), 2014 WL 5011091, at *15 (S.D.N.Y. Sept. 30, 2014) (rejecting access to courts claim based on lack of dedicated word processor or typewriter for prisoner use); *Jamison v. Hayden*, No. 03-CV-913 (FJS/DRH), 2008 WL 907316, at *5 (N.D.N.Y. Mar. 31, 2008) ("[I]nmates, as a matter of law, do not have a constitutional right to a typewriter."). Thus, the denial of access to a typewriter will be considered as one part of the claim for denial of access to the courts.

To state a claim for denial of access to the courts, Kalican must allege facts

demonstrating that the defendants acted deliberately and maliciously and that he suffered an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996). To establish an actual injury, Kalican must allege facts showing that the defendants took or were responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002). For example, Kalican could demonstrate an actual injury by providing evidence "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of the deficiencies in the prison's legal assistance facilities, he could not have known." *Lewis*, 581 U.S. at 351; *see also Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001). The fact that Kalican may not have been able to litigate effectively once his case was filed, however, does not constitute an actual injury. *See Lewis*, 581 U.S. at 355 (disclaiming any requirement that inmates be afforded sufficient resources to litigate effectively once their claims are brought before the court).

     Kalican has alleged no facts demonstrating an actual injury. He identifies no case that was dismissed or complaint that he was unable to file as a result of the defendants' actions. In addition, Kalican alleges only that many of his requests were not immediately satisfied. For example, he was allowed to make one legal call in response to a request; he was not allowed to make as many as he wished. He was required to meet the prison indigency standard before receiving free materials, again a delay rather than a denial. Kalican alleges that he was denied free typewriter paper and access to a typewriter, but not that he was denied paper and pens to use to write his documents by hand. Absent any indication that those actions interfered with any pending or planned legal action, the allegations do not demonstrate an actual injury and Kalican

10

fails to allege a plausible claim for denial of access to the courts. *See Johnson v. Nassau Cnty*, No. 13-CV-6510(JS)(WDW), 2014 WL 294259, at *6 (E.D.N.Y. Jan. 24, 2014) (holding that plaintiff failed to state plausible claim for denial of access to the courts because he "made no allegations regarding an actual injury he suffered due to the allegedly inadequate law library or insufficient access to the law library").

At this point, Kalican cannot amend his complaint to allege an actual injury. He fails to identify any defendants in connection with these allegations, merely referring to actions by a unit counselor. These incidents occurred nearly six years ago. If Kalican were now to identify that person, any claims would be time-barred. *See Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469-70 (2d Cir. 1995) (amended pleading does not relate back to filing of original complaint if defendant was not included in original complaint because plaintiff did not know his identity), *modified*, 74 F.3d 1366, 1367 (2d Cir. 1996). All claims relating to denial of access to the courts are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

D.  Responses to Grievances

Kalican alleges that several defendants failed to timely respond to his grievances. The claims underlying those grievances have been dismissed. Thus, the only possible claim relating to those allegations would be for the defendants' failure to comply with the institutional grievance rules.

Kalican has no constitutional entitlement to receive responses to his grievances. *See Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335, 2000 WL 799760, at *3 (6th Cir. 2000) (holding inmate had no constitutional right to effective prison grievance procedure and defendants' failure to properly respond to grievance was not a cognizable claim); *Rhodes v. Hoy*,

No. 9:05-CV-836, 2007 WL 1343649, at *2 (N.D.N.Y. May 5, 2007) (no constitutionally protected liberty interest in having prison officials comply with institutional grievance procedures). Absent a constitutional requirement that the defendants respond to his grievances, all of these claims fail and are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

    E.    Cell Change

Finally, Kalican alleges that defendant Hannah refused his request for a cell change. Kalican does not allege that the request was made as a result of fear of assault by his cellmate. Indeed, he alleges that his request was denied because the Department of Correction does not honor requests based on convenience.

Inmates have no constitutionally protected right to be housed in any particular cell or housing unit. *See Nieves v. Coggeshall*, No. 3:96CV1799 DJS, 2000 WL 340749, at *5 (D. Conn. Jan. 31, 2000) (citing *Russell v. Scully*, 15 F.3d 219, 221 (2d Cir. 1993) (transfer to "less amenable and more restrictive" cell not unconstitutional)). Any possible claim based on the denial of Kalican's request for a cell change is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

III.    Conclusion

Accordingly, pursuant to 28 U.S.C. § 1915A, all remaining claims in the original complaint [**Doc. #1**] and amended complaint [**Doc. #11**] are **DISMISSED**. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 21st day of April 2015, at Bridgeport, Connecticut.

                                          /s/ Stefan R. Underhill
                                          Stefan R. Underhill
                                          United States District Judge